# EXHIBIT A

Received and E-Filed for Record
4/13/2020 12:01 PM
Melisa Miller, District Clerk
Montgomery County, Texas
Deputy Clerk, Jeff Fiore

CAUSE NO. 20-04-04557

| | | |
|---|---|---|
| ORLANDO GUERRA DELGADO AND AYLEN E. GUERRA, | § § § | IN THE JUDICIAL COURT OF |
| *Plaintiffs,* | § § | |
| V. | § § | MONTGOMERY COUNTY, TEXAS |
| AMICA MUTUAL INSURANCE COMPANY AND ALLEN K. BURNS, | § § § § | Montgomery County - DC - County Court at Law #2 |
| *Defendant.* | § | _____ DISTRICT COURT |

## PLAINTIFFS' ORIGINAL PETITION, JURY DEMAND, AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Orlando Guerra Delgado and Aylen E. Guerra, ("Plaintiffs"), and files *Plaintiffs' Original Petition, Jury Demand, and Request for Disclosure*, complaining of Amica Mutual Insurance Company ("Amica") and Allen K. Burns ("Burns") (or collectively "Defendants") and for cause of action, Plaintiffs respectfully shows the following:

### DISCOVERY CONTROL PLAN

1.    Plaintiffs intend to conduct discovery under Level 3, Texas Rules of Civil Procedure 190.4.

### PARTIES

2.    Plaintiff, Orlando Guerra Delgado resides in Montgomery County, Texas.

3.    Plaintiff, Aylen E. Guerra resides in Montgomery County, Texas.

4.    Defendant, Amica Mutual Insurance Company, is a foreign insurance company, engaged in the business of insurance in the State of Texas. Plaintiffs request service of citation upon Amica Mutual Insurance Company, through its registered agent for service**: c/o Robert R. Foss, Jr. 2150 Town Square Place, Suite 600, Sugar Land, Texas 77479-1465**.

Plaintiffs request service at this time.

5.    Defendant Allen K. Burns is an individual resident of Cypress, Texas.  Burns may be served
      with citation at the address listed with the Texas Department of Insurance: **11702 Brydan
      Drive, Cypress Texas 77429-5359**.  Plaintiffs request service at this time.

## JURISDICTION

6.    The Court has jurisdiction over Amica Mutual Insurance Company because this Defendant
      engages in the business of insurance in the State of Texas, and the causes of action arise
      out of Amica's business activities in the state, including those in Montgomery County,
      Texas, with reference to this specific case.

7.    The Court has jurisdiction over Burns because this Defendant engages in the business of
      adjusting insurance claims in the State of Texas, and the causes of action arise out of this
      Defendant's business activities in the State of Texas, including those in Montgomery
      County, Texas, with reference to this specific case.

## VENUE

8.    Venue is proper in Montgomery County, Texas because the insured property is located in
      Montgomery County, Texas, and all or a substantial part of the events giving rise to this
      lawsuit occurred in Montgomery County, Texas.  TEX. CIV. PRAC. & REM. CODE §
      15.032.

## FACTS

9.    Plaintiffs assert claims for breach of contract, common law bad faith, fraud, violations of
      sections 541 and 542 of the Texas Insurance Code, and violations of the Texas DTPA.

10.   Plaintiffs own an Amica Mutual Insurance Company insurance policy, number

2

69064228EA ("the Policy").  At all relevant times, Plaintiffs owned the insured premises located at **95 South Regan Mead Circle The Woodlands, Texas 77382** ("the Property").

11.   Amica Mutual Insurance Company or its agent sold the Policy, insuring the Property, to Plaintiffs.  Amica Mutual Insurance Company represented to Plaintiffs that the Policy included hail and windstorm coverage for damage to Plaintiffs' Property.

12.   On or about January 22, 2019, the Property sustained extensive damage resulting from a severe storm that passed through the Spring/Montgomery County, Texas area.

13.   In the aftermath of the hail and windstorm, Plaintiffs submitted a claim to Amica against the Policy for damage to the Property.  Amica assigned claim number 60003450570 to Plaintiffs' claim.

14.   Plaintiffs asked Amica to cover the cost of damage to the Property pursuant to the Policy.

15.   Amica hired or assigned its agent, US Adjusting Services.  US Adjusting Services thereafter assigned Burns to inspect and adjust the claim.  Burns conducted an inspection on or about August 26, 2019, according to the information contained in his estimate. Burns' findings generated an estimate of damages totaling $0.00. After the application of depreciation and $2,370.00 deductible, Plaintiffs were left without adequate funds to make repairs on the entirety of their claim.

16.   Amica, through its agent, Burns, conducted a substandard and improper inspection of the Property, which grossly undervalued the cost of repairs in its estimate and yielded an unrealistic amount to underpay coverage.

17.   Amica and Burns have ultimately refused full coverage which includes, but is not limited to, replacement of the roof and additional exterior damage. Specifically, Burns found hail

3

damage to the roof and window beading, but determined hail occurred prior to the Amica policy inception. Plaintiffs disputed Amica's and Burns' determination and requested a re-inspection. Plaintiffs' third-party inspector found hail damage to Plaintiffs entire composite shingle roof. In addition, he found damage to the drip edge, ridge cap, valley metal, flashing, roof vent, chimney flashing, furnace vent, exhaust cap, step flashing, and wood fence that were completely absent from Burns estimate.

18.     The damage to Plaintiffs Property is currently estimated at $35,210.20.

19.     Burns had a vested interest in undervaluing the claims assigned to him by Amica in order to maintain his employment. The disparity in the number of damaged items in his report compared to that of the third-party inspector's as well as the difference in valuation is evidence of unfair claims handling practices on the part of Burns.

20.     Burns misrepresented the date the damages occurred, actual amount of damage Plaintiffs Property sustained in addition to how much it would cost to repair the damage. Burns made these misrepresentations as a licensed Texas adjuster with the hope that Plaintiffs would rely on his expertise and accept the bad faith estimate as a true representation of the damages.

21.     After reviewing Plaintiffs Policy, Burns misrepresented that the damage was not covered under the policy. Burns used his expertise to fabricate plausible explanations for why visible damage to Plaintiffs Property would not be covered under the policy.

22.     As stated above, Amica and Burns improperly and unreasonably adjusted Plaintiffs claim. Without limitation, Amica and Burns misrepresented the cause of, scope of, and cost to repair damages to Plaintiffs Property, as well as the amount of insurance coverage for

4

Plaintiffs claim or loss under the Policy.

23.     Amica and Burns made these and other false representations to Plaintiffs, either knowingly or recklessly, as a positive assertion, without knowledge of the truth. Amica and Burns made these false representations with the intent that Plaintiffs act in accordance with the misrepresentations regarding the grossly deficient damage and repair estimates prepared Burns.

24.     Plaintiffs relied on Amica and Burns's misrepresentations, including but not limited to those regarding coverage, the cause of, scope of, and cost to repair the damage to Plaintiffs Property. Plaintiffs' damages are the result of Plaintiffs' reliance on these misrepresentations.

25.     Upon receipt of the inspection and estimate reports from Burns, Amica failed to assess the claim thoroughly. Based upon Burns's grossly unreasonable, intentional, and reckless failure to investigate the claim properly prior to underpaying coverage, Amica failed to provide coverage due under the Policy, and Plaintiffs suffered damages.

26.     Because Amica and Burns failed to provide coverage for Plaintiffs' insurance claim, Plaintiffs have been unable to complete any substantive repairs to the Property. This has caused additional damage to Plaintiffs' Property.

27.     Furthermore, Amica and Burns failed to perform their contractual duties to Plaintiffs under the terms of the Policy. Specifically, Burns performed an unreasonable and substandard inspection that allowed Amica to refuse to pay full proceeds due under the Policy, although due demand was made for an amount sufficient to cover the damaged Property, and all conditions precedent to recover upon the Policy were carried out by Plaintiffs.

28.  Amica's and Burns's misrepresentations, unreasonable delays, and continued denials constitute a breach of the statutory obligations under Chapters 541 and 542 of the Texas Insurance Code.  Thus, the breach of the statutory duties constitutes the foundation of a breach of the insurance contract between Defendant and Plaintiffs.

29.  Amica's and Burns's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a) (1).  Amica and Burns have failed to settle Plaintiffs' claim in a fair manner, although they were aware of their liability to Plaintiffs under the Policy. Specifically, Amica and Burns have failed to, in an honest and fair manner, balance their own interests in maximizing gains and limiting disbursements, with the interests of Plaintiffs by failing to timely pay Plaintiffs coverage due under the Policy.

30.  Amica's and Burns's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a) (2) (A).  Amica and Burns failed to provide Plaintiffs a reasonable explanation for underpayment of the claim.

31.  Additionally, after Amica received statutory demand on or about February 6, 2020, Amica has not communicated that any future settlements or payments would be forthcoming to pay for the entire loss covered under the Policy, nor did it provide any explanation for failing to settle Plaintiffs claim properly.

32.  Amica's and Burns's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a) (4).  Burns performed a biased and intentionally substandard inspection designed to allow Amica to refuse to provide full coverage to Plaintiffs under the Policy.

6

33.   Specifically, Amica and Burns performed an outcome-oriented investigation of Plaintiffs' claims, which resulted in a biased, unfair, and inequitable evaluation of Plaintiffs' losses on the Property.

34.   Amica's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.055. Due to Burns subpar inspection, Amica failed to reasonably accept or deny Plaintiffs full and entire claim within the statutorily mandated time after receiving all necessary information.

35.   Amica's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims.   TEX. INS. CODE §542.056.   Due to Burns's intentional undervaluation of Plaintiffs' claims, Amica failed to meet its obligations under the Texas Insurance Code regarding timely payment of the claim.   Specifically, Burns's understatement of the damage to the Property caused Amica to delay full payment of Plaintiffs' claim longer than allowed, and Plaintiffs have not received rightful payment for Plaintiffs' claim.

36.   Amica and Burns's wrongful acts and omissions have forced Plaintiffs to retain the professional services of the attorneys and law firm representing him with respect to these causes of action.

## CAUSES OF ACTION AGAINST DEFENDANT
## AMICA MUTUAL INSURANCE COMPANY

37.   All paragraphs from the fact section of this petition are hereby incorporated into this section.

## BREACH OF CONTRACT

38.   Amica is liable to Plaintiffs for intentional violations of the Texas Insurance Code, and intentional breach of the common law duty of good faith and fair dealing. It follows, then,

7

that the breach of the statutory duties constitutes the foundation of an intentional breach of the insurance contract between Amica and Plaintiffs.

39.    Amica's failure and/or refusal to pay adequate coverage as obligated under the Policy, and under the laws of the State of Texas, constitutes a breach of Amica's insurance contract with Plaintiffs.

## NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

40.    Amica's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a). All violations under this article are actionable by TEX. INS. CODE §541.151.

41.    Amica's unfair settlement practice of misrepresenting to Plaintiffs' material facts relating to coverage constitutes an unfair method of competition and a deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a) (1).

42.    Amica's unfair settlement practice of failing to attempt in good faith to make a prompt, fair, and equitable settlement of the claim, even though Amica's liability under the Policy was reasonably clear, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a) (2) (A).

43.    Amica's unfair settlement practice of failing to provide Plaintiffs a prompt and reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for underpayment and denial of the claim, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a) (3).

44.    Amica's unfair settlement practice of refusing to pay Plaintiffs' full claim without conducting a reasonable investigation constitutes an unfair method of competition and a deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a) (7).

## NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE: THE PROMPT PAYMENT OF CLAIMS

45.    Amica's conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims. All violations made under this article are actionable under TEX. INS. CODE §542.060.

46.    Amica's delay in paying Plaintiffs' claim following receipt of all items, statements, and forms reasonably requested and required, for longer than the amount of time provided, constitutes a non-prompt payment of the claim. TEX. INS. CODE §542.058.

## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

47.    Amica's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to an insured in insurance contracts.

48.    Amica's failure to adequately and reasonably investigate and evaluate Plaintiffs claim, even though Amica knew or should have known by the exercise of reasonable diligence that liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

## DTPA VIOLATIONS

49.    Amica's conduct constitutes multiple violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE 17.41–63. Plaintiffs are consumers of goods and services provided by Amica pursuant to the DTPA. Plaintiffs have met all conditions

9

precedent to bring this cause of action against Amica. Specifically, Amica's violations of the DTPA include, without limitation, the following matters:

A.  By its acts, omissions, failures, and conduct, Amica has violated sections 17.46(b)(2), (5), (7), (9), (12), (20) and (24) of the DTPA. Amica's violations include, (1) unreasonable delays in the investigation, adjustment, and resolution of Plaintiffs claim, (2) failure to give Plaintiffs the benefit of the doubt, and (3) failure to pay for the proper repair of Plaintiffs' property when liability has become reasonably clear, which gives Plaintiffs the right to recover under section 17.46(b)(2).

B.  Amica represented to Plaintiffs that the Policy and Amica's adjusting agent and investigative services had characteristics or benefits they did not possess, which gives Plaintiffs the right to recover under section 17.46(b)(5) of the DTPA.

C.  Amica represented to Plaintiffs that Amica's Policy and adjusting services were of a particular standard, quality, or grade when they were of another, in violation of section 17.46(b)(7) of the DTPA.

D.  Amica advertised the Policy and adjusting services with the intent not to sell them as advertised, in violation of section 17.46(b)(9) of the DTPA.

E.  Amica breached an express warranty that the damages caused by wind and hail would be covered under the Policy. This breach entitles Plaintiffs to recover under sections 17.46(b) (12) and (20) and 17.50(a) (2) of the DTPA.

F.  Amica's actions are unconscionable in that Amica took advantage of Plaintiffs' lack of knowledge, ability, and experience to a grossly unfair degree. Amica's

        unconscionable conduct gives Plaintiffs a right to relief under section 17.50(a) (3) of the DTPA; and

G.      Amica's conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA.

50.     Each of the above-described acts, omissions, and failures of Amica is a producing cause of Plaintiffs' damages.   All of Amica's acts, omissions, and failures were committed "knowingly" and "intentionally," as defined by the Texas Deceptive Trade Practices Act.

51.     Each of the above-described acts, omissions, and failures of Amica is a producing cause of Plaintiffs' damages.   All of the above-described acts, omissions, and failures were committed "knowingly" and "intentionally," as defined by the Texas Deceptive Trade Practices Act.

### FRAUD

52.     All allegations above are incorporated herein.

53.     Amica is liable to Plaintiffs for common law fraud.

54.     Each and every misrepresentation described above concerned material facts that absent such representations, Plaintiffs would not have acted as Plaintiffs did, and Amica knew its representations were false or made recklessly without any knowledge of their truth as a positive assertion.

55.     Amica made the statements intending that Plaintiffs act upon them.   Plaintiffs then acted in reliance upon the statements, thereby causing Plaintiffs to suffer injury constituting common law fraud.

## CAUSES OF ACTION AGAINST DEFENDANT ALLEN K. BURNS

### NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

56.     All allegations above are incorporated herein.

57.     Burns's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Claim Settlement Practices Act. TEX. INS. CODE §541.060(a).

58.     Burns is individually liable for his unfair and deceptive acts, irrespective of the fact that he was acting on behalf of Amica, because Burns is a "person," as defined by TEX. INS. CODE §541.002(2).

59.     Burns knowingly underestimated the amount of damage to the Property.  As such, Burns failed to adopt and implement reasonable standards for the investigation of the claim arising under the Policy.  TEX. INS. CODE §542.003(3).

60.     Furthermore, Burns did not attempt in good faith to affect a fair, prompt, and equitable settlement of the claim. TEX. INS. CODE §542.003(4).

61.     Burns's unfair settlement practice of failing to provide Plaintiffs a prompt and reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for partial denial of the claim, also constitutes an unfair method of competition and an unfair and deceptive act or practice.  TEX. INS. CODE §541.060(a)(3).

62.     Burns's unfair settlement practice of failing to attempt in good faith to make a prompt, fair, and equitable settlement of the claim, even though liability under the Policy was reasonably clear, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(2)(A).

### DTPA VIOLATIONS

12

63.   All allegations above are incorporated herein.

64.   Burns's conduct constitutes multiple violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE 17.41–63.  Plaintiffs are consumers of goods and services provided by Burns pursuant to the DTPA.  Plaintiffs have met all conditions precedent to bringing this cause of action against Burns. Specifically, Burns's violations of the DTPA include the following matters:

    A.   By this Defendant's acts, omissions, failures, and conduct, Burns has violated sections 17.46(b)(2), (5), and (7) of the DTPA.  Burns's violations include, (1) failure to give Plaintiffs the benefit of the doubt, and (2) failure to write up an estimate reflecting the proper repair of Plaintiffs Property when liability has become reasonably clear, which gives Plaintiffs the right to recover under section 17.46(b)(2).

    B.   Burns represented to Plaintiffs that the Policy and his adjusting and investigative services had characteristics or benefits they did not possess, which gives Plaintiffs the right to recover under section 17.46(b)(5) of the DTPA.

    C.   Burns represented to Plaintiffs that the Policy and his adjusting services were of a particular standard, quality, or grade when they were of another, in violation of section 17.46(b)(7) of the DTPA.

    D.   Burns's actions are unconscionable in that Burns took advantage of Plaintiffs' lack of knowledge, ability, and experience to a grossly unfair degree.  Burns's unconscionable conduct gives Plaintiffs a right to relief under section 17.50(a)(3) of the DTPA; and

13

E.     Burns's conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA.

65.    Each of Burns's above-described acts, omissions, and failures is a producing cause of Plaintiffs' damages. All acts, omissions, and failures were committed "knowingly" and "intentionally" by Burns, as defined by the Texas Deceptive Trade Practices Act. TEX. BUS. & COM. CODE 17.45.

**FRAUD**

66.    All allegations above are incorporated herein.

67.    Amica assigned or hired US Adjusting Services to adjust the claim. US Adjusting Services assigned Burns to adjust the claim.

     a.  Burns had a vested interest in undervaluing the claims assigned to him by Amica in order to maintain his employment. The disparity in the number of damaged items in his report compared to that of Plaintiffs' public adjuster's is evidence of fraud on the part of Burns. The valuation of damages that were included in Burns's report compared to Plaintiffs' public adjuster's is also evidence of fraud on the part of Burns.

     b.  Furthermore, Burns was aware of Plaintiffs' deductible before even visiting the Property to conduct the inspection. Burns had advanced knowledge of what amount of damages he needed to find in order to either deny the claim or find the claim below the deductible.

     c.  Burns made misrepresentations as to the amount of damage Plaintiffs' Property

14

sustained as well as misrepresentations regarding how much it would cost to repair the damage to Plaintiffs' property.

d. Burns made further misrepresentations to Plaintiffs during his inspection. Burns used his expertise to fabricate plausible explanations for why visible damage to Plaintiffs' Property would not be covered under the policy. Such misrepresentations include damage to the Property owing from wear and tear, damage from a previous claim, and damage of a type not consistent with the type of claim that was made.

## GROSS NEGLIGENCE

68.  All allegations above are incorporated herein.

69.  Burns's actions or omissions constitute gross negligence as defined in TEX. CIV. P. & REM. CODE § 41.001 (11)(A) and (B):

a. Burns' actions, when viewed objectively from the standpoint of the actor at the time of their occurrence involves an extreme degree of risk, considering the probability and magnitude of potential harm to Plaintiffs; and

b. Burns had actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, and/or welfare of Plaintiffs.

70.  Burns intentionally misrepresented the scope and amount of damages on the estimate prepared for Plaintiffs' Property on behalf of Amica. His estimate was to such an extreme degree below what another licensed adjuster would have done in this situation (as evidenced by the Public Adjuster's estimate); it was also in complete disregard for the risk

15

and harm Plaintiffs would suffer if the actual damages to the Property were allowed to persist unrepaired.

## NEGLIGENCE

71.   All allegations above are incorporated herein.

72.   Burns was negligent in his actions with regard to his adjusting of Plaintiffs' claim and violated the standard of care for an insurance adjuster licensed in the state of Texas. Those failures include one or more of the following acts or omissions:

   a.   Failure to conduct a reasonable inspection;

   b.   Failure to include covered damage that would be discovered as a result of reasonable inspection;

   c.   Failure to identify the proper cause and scope of the damage to Plaintiffs' Property;

   d.   Failure to identify the cost of proper repairs to Plaintiffs' Property; and

   e.   Failure to communicate to Plaintiffs the reasons for specific determinations made regarding the inclusion or exclusion of damage to Plaintiffs' Property.

73.   Burns's acts and/or omissions constitute negligence. His conduct was therefore a proximate cause of the damages sustained by Plaintiffs.

74.   At all relevant times, Burns was an agent or employee of Defendant Amica.

75.   Burns's unreasonable inspection was performed within the course and scope of his duties with Defendant Amica. Therefore, Amica is also liable for the negligence of Burns through the doctrine of *respondeat superior.*

## GROSS NEGLIGENCE

76.   All allegations above are incorporated herein.

77.    Burns' actions or omissions constitute gross negligence as defined in TEX. CIV. P. &

REM. CODE § 41.001 (11)(A) and (B):

    a.  Burns' actions, when viewed objectively from the standpoint of the actor at the time

of their occurrence involves an extreme degree of risk, considering the probability

and magnitude of potential harm to Plaintiffs; and

    b.  Burns had actual, subjective awareness of the risk involved but nevertheless

proceeded with conscious indifference to the rights, safety, and/or welfare of

Plaintiffs.

78.    Burns intentionally misrepresented the scope and amount of damages on the estimate

prepared for Plaintiffs' Property on behalf of Amica. His estimate was to such an extreme

degree below what another licensed adjuster would have done in this situation (as

evidenced by the Public Adjuster's estimate); it was also in complete disregard for the risk

and harm Plaintiffs would suffer if the actual damages to the Property were allowed to

persist unrepaired.

## KNOWLEDGE

79.    Defendants made each of the acts described above, together and singularly, "knowingly,"

as defined in the Texas Insurance Code, and each was a producing cause of Plaintiffs'

damages described herein.

## WAIVER AND ESTOPPEL

80.    Defendants waived and are estopped from asserting any coverage defenses, conditions,

exclusions, or exceptions to coverage not contained in any reservation of rights letter to

Plaintiffs.

17

## DAMAGES

81.     The damages caused to the Property have not been properly addressed or repaired since the claim was made, causing further damage to the Property, and undue hardship and burden to Plaintiffs. These damages are a direct result of Defendants' mishandling of Plaintiffs' claims in violation of the laws set forth above.

82.     Plaintiffs currently estimate that actual damages to the Property under the Policy are $35,210.20.

83.     Plaintiffs would show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained. The above-described acts, omissions, failures, and conduct of Defendants have caused Plaintiffs' damages, which include, without limitation, the cost to properly repair Plaintiffs Property and any investigative and engineering fees incurred.

84.     For breach of contract, Plaintiffs are entitled to regain the benefit of their bargain, which is the amount of their claims, consequential damages, together with attorney's fees.

85.     For noncompliance with the DTPA and Texas Insurance Code, Unfair Settlement Practices, Plaintiffs are entitled to actual damages, which include the loss of benefits owed pursuant to the Policy, mental anguish, court costs, and attorney's fees. For knowing and intentional conduct of the acts described above, Plaintiffs ask for three (3) times his actual damages. TEX. INS. CODE §541.152 and TEX. BUS. & COM. CODE 17.50(b) (1).

86.     For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiffs is entitled to the amount of his claims, plus a per annum penalty on those claims, as damages,

as well as pre-judgment interest and reasonable attorney's fees. TEX. INS. CODE §542.060.

87.     For breach of the common law duty of good faith and fair dealing, Plaintiffs are entitled to compensatory damages, including all forms of loss resulting from Defendants' breach of duty, such as additional costs, economic hardship, losses due to the nonpayment of the amount Amica owed, exemplary damages, and damages for emotional distress.

88.     Defendants' breach of the common law duty of good faith and fair dealing was committed intentionally, with a conscious indifference to Plaintiffs' rights and welfare, and with "malice," as that term is defined in Chapter 41 of the Texas Civil Practices and Remedies Code. These violations are the type of conduct which the State of Texas protects its citizens against by the imposition of exemplary damages. Therefore, Plaintiffs seek the recovery of exemplary damages in an amount determined by the finder of fact sufficient to punish Defendants for their wrongful conduct and to set an example to deter Defendants and others from committing similar acts in the future.

89.     For the prosecution and collection of this claim, Plaintiffs have been compelled to engage the services of the attorneys subscribed to this pleading. Therefore, under Chapter 38 of the Texas Civil Practices and Remedies Code, sections 541 and 542 of the Texas Insurance Code, and section 17.50 of the DTPA, Plaintiffs is entitled to recover a sum for the reasonable and necessary services of Plaintiffs attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

90.     As required by Rule 47(b) of the Texas Rules of Civil Procedure, Plaintiffs counsel states that the damages sought are in an amount within the jurisdictional limits of this Court. As

19

required by Rule 47(c)(4) of the Texas Rules of Civil Procedure, Plaintiffs counsel states that Plaintiffs seeks only monetary relief of no less than $100,000.00, but no more than $200,000.00, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees. A jury will ultimately determine the monetary relief actually awarded, however. Plaintiffs also seek pre-judgment and post-judgment interest at the highest legal rate.

## REQUESTS FOR DISCLOSURE

91.    Under Texas Rules of Civil Procedure 190 and 194, Plaintiffs request that Defendants disclose, within fifty (50) days from the date this request is served, the information or material described in Rules 190.2(b)(6) and 194.2.

## JURY DEMAND

92.    Plaintiffs hereby request a jury trial for all causes of action alleged herein, tried before a jury consisting of citizens residing in Montgomery County, Texas. Plaintiffs hereby tender the appropriate jury fee.

## PRAYER

Plaintiffs pray that Defendants, Amica Mutual Insurance Company and Allen K. Burns, be cited and served to appear and that upon trial hereof, Plaintiffs recover from Defendants, Amica Mutual Insurance Company and Allen K. Burns such sums as would reasonably and justly compensate Plaintiffs in accordance with the rules of law and procedure, as to actual, consequential, and treble damages under the Texas Insurance Code and Texas Deceptive Trade Practices Act, and all punitive, additional, and exemplary damages as may be found. In addition, Plaintiffs request the award of attorney's fees for the trial and any appeal of this case, for all costs

of Court expended on Plaintiffs behalf, for pre-judgment and post-judgment interest as allowed by law, and for any other relief, at law or in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

By: /s/ *Chad T. Wilson*

Chad T. Wilson
Bar No. 24079587
Tara L. Peveto
Bar No. 24076621
CHAD T. WILSON LAW FIRM PLLC
455 E Medical Center Blvd, Ste 555
Webster, Texas 77598
Telephone: (832) 415-1432
Facsimile: (281) 940-2137
eservice@cwilsonlaw.com

ATTORNEYS FOR PLAINTIFFS

21